DISSENTING OPINION.
Whereas, I am unable to concur in the majority opinion *Page 650 
rendered by this court in this case, I deem it proper and advisable to state my reasons for dissenting from that opinion. They are as follows:
 STATEMENT OF FACTS.
This is an action begun in the district court of Kay county, by Albert Reummeli, plaintiff in error, plaintiff below, to recover of the defendant, William Cravens, the sum of seven hundred and eighty-four and 55-100 dollars, appropriated and embezzled by the defendant from the plaintiff while acting as the agent of the plaintiff in the wholesaling of beer and malt liquors, and the selling of ice in Kay county, Oklahoma.
The court below sustained the motion of defendant for judgment in his favor, upon the opening statement of counsel for plaintiff to the jury, and rendered judgment accordingly. The plaintiff in his petition alleges, (record page 4) that on or about May 1, 1896, he employed the defendant as his agent in the selling, handling and distributing of beer, ice and malt liquor, and the collection of the moneys for the same, within and for Kay county, Oklahoma, at a monthly salary, and his necessary expenses in handling and selling said, beer, ice and malt liquors.
The said defendant entered upon his duties as such agent on or about May 1st, 1896, and continued as such until on or about May 1st, 1900, at which time the defendant was discharged by plaintiff. The plaintiff paid the defendant in full all of his salary, and paid him in full for all of his said expenses. That the defendant, during the period of his agency did fraudulently misappropriate and embezzle, and convert to his own use and benefit, certain sums of money collected *Page 651 
by defendant in the course of his business as agent for the plaintiff, for goods, wares and merchandise furnished the defendant by the plaintiff, and sold by defendant as his agent, as hereinafter set forth, to-wit:
1st, May 31, 1899, the sum of ......... $ 50 00 2nd, June 5th, 1899, the sum of ....... 7 65 3rd, June 22d 1899, the sum of ...... 99 55 4th, July 10th, 1899, the sum of ...... 50 00 5th, Dec. 30th, 1899, the sum of ...... 7 85 6th, on or about March 1st, 1900, the sum of .......................... 180 00 7th, between May 1st, 1896, and May 1st, 1900, the sum of ............... 148 85
The exact date or dates of this last item plaintiff is unable to give.
8th, That during the period of defendant's agency defendant overcharged plaintiff in his monthly expense account each month during the time of his employment. That the sums so overcharged amounted to an average of $20 per month, and that for the period commencing the 1st day of March, 1899, to the 1st day of January, 1900, such amount of overcharge amounted to the sum of $200.00. That said sums of money were moneys that the defendant represented he had expended in and about the business as his necessary expense, and had been permitted by plaintiff to retain as such, and that plaintiff had no knowledge of the fraudulent overcharges so made by the defendant in said accounts until after the termination of defendant's agency.
9th, Jan. 13, 1900, the sum of ....... $ 12 50 10th, May 22d 1900, the sum of ...... 20 00 11th, on or about May, 1900, the sum of 8 00 *Page 652 
Plaintiff prays judgment for $784.55, with interest, for costs and general relief.
Plaintiff, at the time of filing his petition, filed an affidavit in attachment for an attachment against the property of the defendant (record, page 7), and also filed his attachment bond, with proper security with the clerk (record, page 9), and on the same day an order of attachment against the property of the defendant was issued by the clerk (record, page 11).
The sheriff, under said order of attachment, duly attached and caused to be appraised as provided by law, the following real estate of defendant:
Lot 9, block 9, in Lynchville, a sub-division of Ponca City, O. T., appraised at $75.00.
Lot 10, block 9, in Lynchville, a sub-division of Ponca City, O. T., appraised at $100.00.
Lot 17, block 38, in Hartman, a sub-division of Ponca City, O. T., appraised at $2,100.00
On February 9th, 1901, the defendant filed his motion to dissolve said attachment, supported by his affidavit, and as grounds therefor alleged that the facts set out in the affidavit for attachment were false and untrue and that the bond for attachment was insufficient (record, page 14).
On March 5th, 1901, the defendant filed his amended answer (record, page 15). In this answer, after denying all allegations in the petition of plaintiff, the answer alleges that plaintiff was the agent of the Pabst Brewing Company for Oklahoma, and that such agency consisted in selling at wholesale the goods, wares and merchandise of that company. That pursuant to said agency, during the term *Page 653 
mentioned in plaintiff's petition, from May 1st, 1896, to May 1st, 1900, that plaintiff did sell in Kay, Pawnee and Payne counties of said territory said goods of the Pabst Brewing Company, which goods were beer, malt products and other liquors, all of which were sold by the said plaintiff from depots, agencies or storage houses located in said counties.
Defendant further alleges that in the sale of said goods by plaintiff, the said goods were shipped in carload lots and otherwise, and at each of the aforesaid agencies, located in the aforesaid counties, by said plaintiff, through the defendant as agent, were sold at wholesale to the retail liquor trade in the aforesaid counties.
The answer then proceeds:
"The defendant further alleges and avers that through and under the agreement mentioned in plaintiff's petition, which agreement was made in Oklahoma Territory, this defendant was employed by the plaintiff at a regular stipulated salary to act as agent, manager and solicitor of the said plaintiff to sell and dispose of and control the sale of beer, beer products and malt liquors of the said Pabst Brewing Company, and that pursuant to said agreement this defendant did, during the aforesaid period from the first day of May, 1896, to the first day of May, 1900, sell the same at wholesale for said plaintiff in the said counties of Kay, Pawnee and Payne. That the same were sold by this defendant under said contract for the exclusive use and benefit of the said plaintiff, and that this defendant did not share in any of the profits arising from the said sale of said goods for the said plaintiff.
"The defendant further alleges and avers that all of said sales made for the plaintiff during said period were sold for and on behalf of the said plaintiff during all of said time, and that the said plaintiff during all of said time, *Page 654 
from the first day of May, 1896, to the first day of May, 1900, was not authorized to conduct the business of wholesaling malt, spirituous and vinous liquors at or within either of said counties in said territory, and that all of the said sales so made and said goods so furnished by the plaintiff, were furnished by the plaintiff with full knowledge of the fact that the said plaintiff had no license to conduct the business of wholesaling malt, spirituous and vinous liquors at or within the said counties of Kay and Pawnee of said territory, and that all of the sales, contracts, agreements and arrangements or goods furnished by the said plaintiff, and by the said plaintiff distributed through its agents in said counties of Kay, Pawnee, and during said time from the first day of May, 1896, to the first day of May, 1900, were illegal and void, and against public policy, for the reasons as hereinbefore stated, and that said plaintiff was not authorized to conduct the said business of wholesaling of said malt, spirituous and vinous liquors; and the defendant here avers that all of the items mentioned in plaintiff's said petition were and are items for the collection of moneys secured for beer sold by the said plaintiff during said time from May 1st, 1896, to May 1st, 1900, in said counties, at which time the said plaintiff was not licensed to sell the same.
"Defendant further alleges and avers that on, to-wit: On or about the first day of May, this defendant and the said plaintiff, through its authorized agent, had a full and complete settlement, wherein this defendant and the plaintiff settled their accounts in full, with the exception of the account of the defendant against the plaintiff for a team furnished in the management and conducting the said agencies for the plaintiff during said period. That under said settlement it was ascertained that the plaintiff owed this defendant the sum of three dollars, exclusive of the defendant's claim for a team, buggy and harness, furnished in the management and conducting of said business by defendant for the plaintiff. That the said sum was agreed to and paid *Page 655 
by the plaintiff to the defendant; and the settlement of the defendant's claim for compensation for said team, buggy and harness furnished during said time left to be adjusted individually between the plaintiff and this defendant.
"Defendant denies specifically that he collected and failed to account for the items mentioned from one to eleven inclusive, in plaintiff's petition, and alleges and avers that all of the same were taken into account in said settlement with the plaintiff, and that all and every sum owing by this defendant to the said plaintiff has been paid, and that this defendant did not, on the first day of May, 1900, and does not at this time, owe the said plaintiff any of said items mentioned in said petition, nor the said sum of seven hundred and eighty-four and 55-100 dollars ($784.55); and defendant further alleges and avers that if the allegations of plaintiff's petition so far as the account stated were true, the said plaintiff is not entitled to recover the same for the reasons as hereinbefore plead, that the said account was incurred under and by virtue of an illegal contract, the said plaintiff not having paid taxes and secured a license in said counties to sell said goods, for which said sum of moneys mentioned in plaintiff's petition were alleged to have been collected."
The answer then, by way of cross-petition, sets up a counterclaim against the plaintiff, but as the same was neither submitted to nor passed upon by the court or jury, it is immaterial to the case here.
Plaintiff, in his reply (record, page 19), denies each and every allegation to the amended answer, except as therein afterwards admitted. The reply then proceeds:
"Plaintiff states that during all of the years 1896, 1897, 1898, 1899 and 1900, the defendant was duly licensed to sell intoxicating liquor at wholesale in the counties of Kay and Pawnee in Oklahoma Territory, where the sales in plaintiff's petition mentioned were made. *Page 656 
"Plaintiff admits that he had settlement of the business and employment between this plaintiff and defendant, but that in said settlement and as a part of the same the said defendant falsely and fraudulently represented to this plaintiff that he had not collected or obtained the money or items set forth in plaintiff's petition, and that the same were due and unpaid. And that relying upon said representations and statements, this plaintiff did enter into said settlement with said defendant, and did pay to said defendant as salary and expenses a sum of money equal to the amount set forth in plaintiff's petition, and over and above what plaintiff actually owed this defendant. That the said sum of money was had and received by said defendant to the use and benefit of this plaintiff, and the said sum is due and owing from the said defendant to this plaintiff.
"Plaintiff for his answer to the alleged cross-petition and counterclaim of defendant herein, denies each and every allegation therein contained. Wherefore plaintiff prays judgment as prayed for in his petition herein."
On the 14th day of October, 1901, the defendant moved the court to take up, consider and determine his said motion to dissolve the attachment, but the court refused to hear said motion at that time, and made an order that the same be heard and determined at the same time as, and in connection with, the trial of said cause upon the merits (record, pages 20 and 30).
The parties then entered into a stipulation in writing with reference to the license (record, page 21), which (omitting the caption) is again set out in the opening statement of plaintiff to the jury hereinafter noted.
The case came on for trial before the court and a jury. The plaintiff made the following opening statement to the *Page 657 
jury, and the following proceedings were had (record, page 23):
"Statement of the case for plaintiff by Mr. J. F. King: May it please the court. Gentlemen of the jury. We expect in this case the evidence will show the following facts: That during the years 1896, 1897, 1898, 1899 and 1900, during all the time covered by plaintiff's petition in this case, the plaintiff, Albert Ruemmeli, is and was, and ever since has been, a resident of the city of St. Louis, in the state of Missouri, and that during none of these times has he been a resident of the Territory of Oklahoma; that he was engaged in the sale of malt liquors throughout the country generally; that he was engaged in handling the Pabst product over a certain territory, and desiring to establish agencies, he made and entered into an agreement some time in the early part of the year 1896 with the defendant in this case, William Cravens, by which William Cravens was to secure a license in his name — that is, in William Cravens' name — in this, Kay county, Oklahoma Territory, and possibly some other counties in this territory. That Mr. Ruemmeli was to furnish Mr. Cravens beer and ice, and that Mr. Cravens was to sell the beer and ice to retail dealers in this county, who were lawfully licensed to sell the same. That Mr. Cravens was to have the entire charge, management and control of that business, was to look after it, and that he was to exercise his discretion in his position according to the laws of the Territory of Oklahoma and sell it according to the laws of the Territory of Oklahoma, and in all manner conduct his business subject to the laws of the Territory of Oklahoma; that this place of business was established at Ponca City, Oklahoma; and that this beer and ice, and beer particularly, was to be furnished upon orders either in carload lots, or in certain packages from the brewery in Milwaukee, Wisconsin. That Mr. Ruemmeli was to pay to Mr. Cravens the sum of $75.00 per month, that he was to pay to him for his services in that business the sum of $75 and his reasonable and rightful *Page 658 
expenses incurred in the conduct of that business. That Mr. Cravens during all this time — that is, during all the times I have mentioned, secured territorial licenses authorizing him to sell and dispose of malt, spirituous and other liquors under the liquor license law in and through Kay county, Oklahoma Territory, and possibly other counties, and he at all times held these licenses. That Mr. Cravens entered upon his duties as agent in the sale of this beer and ice. That that business was conducted by Mr. Cravens in his own name, using his own letter heads, managed by Mr. Ruemmeli in no way whatever, except to receive his accounts from him, and his money. That business was conducted by Mr. Cravens up to the first day of May, 1900, and he sold quite an amount, I believe, $7,000.00, of this beer and ice in this county to the retail dealers of the county, and possibly ice to outside parties. That, at a settlement had between these parties — one of the settlements — I believe about the first day of May, 1900, that the books which Mr. Cravens kept showing his transactions were submitted to the representative of Mr. Ruemmeli. That he represented to Mr. Ruemmeli through his agent that those books contained a true and correct statement of the business which he had done in this county; and that among other things he had charged up as claim against Mr. Ruemmeli one of $50.00 about May 1, 1900, and that originated in the fact that he took $50.00 of this money that had been collected and invested it in a lot — it may be the evidence will show that was by consent of Mr. Ruemmeli — but it was to be held by him in trust; and about the 15th day of July he took $50 of this money and paid it on the balance of that lot; that on June 2, 1899, he paid for the building in part — paid for the lumber that went into the building located upon that lot that stood in the name of William Cravens; that he paid $7.00 on June 5th, or about that time, and he paid $7.50 and $7.85 for some other material which went into that building; and that Mr. Cravens appropriated that lot to himself. He sold the lot *Page 659 
afterwards, and put the money into his pocket and has never accounted to Mr. Ruemmeli for it, and refuses to account with us for it.
"That before March first, 1900, in the due course of his proceedings, he sold beer and ice to a man running a saloon at Kildare, named Woods, to the amount of $150, and the amount of the claim, together with interest up to March first, 1900, amounted to $180.00. That Mr. Woods gave Mr. Cravens a bill of sale which was in effect a mortgage, securing this claim for this beer and ice sold by Mr. Cravens to Mr. William Woods, and Mr. Cravens accepted the bill of sale as his security, together with a number of other claims which he had also secured; that this claim was paid off by Mr. Woods' estate, he having died; that Mr. Cravens executed a bill of sale back to the estate of William Woods, and released this claim entirely; that Mr. Cravens has failed and refused to account to Mr. Ruemmeli for this $180, and has kept the proceeds ever since.
"That between May 1, 1896, and May 1, 1900, Mr. Cravens took out of the business and out of the money the sum of about $148.85, and that he has refused to account for this item, and the same is due from him to the plaintiff. That he charged up on these books an unreasonable amount of expense; that the sums so overcharged amounted to $20.00 per month more than what was reasonable and right; that he deducted the $20.00 per month out of these sales of beer and ice; that he deducted this $20.00 per month out of the proceeds of these sales for this material, and refused to account to Mr. Ruemmeli for them and that it is now due and owing to us. On about May 22, 1900, there was paid to him a claim which was due Mr. Ruemmeli for the sale of beer and ice in the sum of $20.00, which was paid by Mr. Lynch, and that was money he obtained in the course of that business, and refused to account to Mr. Ruemmeli for it. And also the sum of $12.50, which was for feed that Mr. Cravens purchased with the money of Mr. Ruemmeli, *Page 660 
and instead of turning it over to the establishment, he took it to his own use.
"The testimony will further develop the fact that Mr. Braun, here representing Mr. Ruemmeli, had a settlement with Mr. Cravens, or an attempted settlement, sometime along about the first of May, 1900; that these items which I have mentioned were charged upon the books — not being proper items to be charged — they were charged up to Mr. Ruemmeli, and claimed by Mr. Cravens, except this $180, which appeared as a legal and unpaid account upon the books; that Mr. Cravens represented to Mr. Braun that these books contained a true and correct statement of the accounts between himself and Mr. Ruemmeli, and that the charges made upon that book were a true and correct statement of the charges, and that he was entitled to the same, and in that settlement, he was allowed to retain out of the proceeds of those sales the amount of these items I have mentioned to you, and it was found upon a balance of this account there was something like two to four dollars due to Mr. Cravens, and that was paid to Mr. Cravens. That at the time of this settlement Mr. Braun accepted the statement of Mr. Cravens that his book contained a true and correct statement of the account between them, and that he was entitled to the balance shown by the books; that Mr. Braun relied upon that; he did not know of those individual items at the time of the settlement; he did not know that this $100 had been appropriated to the purchase of this lot, and that the lot had been deeded away, and the proceeds turned over to Mr. Cravens, and kept by himself. Neither did Mr. Ruemmeli nor his agents know this house had been built on this place, and paid for by the money of Mr. Ruemmeli, and that Mr. Cravens had also appropriated that to his own use. Mr. Ruemmeli did not know, nor did his agents know, other than Cravens, that this account due from the estate of Mr. Woods had been paid, and that Mr. Cravens owed this account to Mr. Ruemmeli. Neither did he know that this *Page 661 
$148.85, or something thereabout, charged to profit and loss, had been money collected by Mr. Cravens, and that he should have accounted for it; and so with his $20 per month expense account; in that settlement it was represented that these items were just and reasonable, and they took the books for it. Having shown you this state of facts, if the testimony develops that condition of affairs, we will expect a verdict at your hands for the sum of $784.55.
"Now, I will read, if your honor please, this agreed statement of fact in reference to the license. We have agreed to it in writing. In this connection we have made the following agreement: (Counsel here reads paper to the jury as follows:)
" 'It is agreed by both parties hereto as facts in this case, that from May 1, 1896, to May 1, 1900, neither Albert Ruemmeli, the plaintiff, or the Pabst Brewing Company, had any license to sell beer, malt, spirituous or vinous liquors at wholesale or retail in Kay county, O. T.
" 'It is further agreed that from May 1, 1896, to May 1, 1900, William Cravens had a license in his own name to sell beer, malt liquors and cigars at wholesale in Kay county, O. T. That these facts with reference to the license were known by both parties at all times, from May 1, 1896, to May 1, 1900. This agreement is not intended to refer to the United States government license under the revised statutes.'
"Judge Bierer: Comes now the defendant in this case and objects to the introduction of any evidence, and moves the court to instruct the jury to return a verdict in favor of the defendant, upon the plaintiff's petition, and the defendant's answer, taken in connection with the statement of the case made by counsel for plaintiff; that is, upon the facts which plaintiff's counsel in his opening statement for the reason that upon the pleadings and this statement the plaintiff shows that he is not entitled to recover from the defendant, and that the plaintiff is not entitled to maintain *Page 662 
his cause of action as set forth in the petition, and that the defendant is entitled to judgment in his favor upon the statement and pleadings.
"Which motion is sustained by the court. To which ruling of the court the plaintiff then and there excepts.
"Thereupon the court rendered judgment for the defendant and also dissolved the attachment, and ordered the attached property restored to defendant." (Record, pages 29 and 31.)
Dissenting opinion by