## Reeves & Company v. John R. Sheets.

### (Filed September 8, 1905.)

1. **INDIAN LANDS—Leases of—Subleases—Estoppel.** Where a party holds a lease of Indian lands which has been approved by the proper officers of the interior department, such lease containing a provision that the party holding the lease will not at any time, during the period for which the said lands and premises are leased, sub-lease, assign, lease, convey or transfer any of his estate, interest or term or any part thereof, or sub-let the same to any person without the consent thereto of the party of the first part, and the approval of the same by the secretary of the interior, a sub-leasing of the same without the consent of the secretary of the interior is void, and conveys no right by such sub-leasing, and that the sub-lease cannot be enforced. The doctrine of estoppel between landlord and tenant does not apply.

2. **MORTGAGE—Crops to be Grown.** While a mortgage upon crops to be grown in the future may be valid, a mortgagor can not create a lien upon property which he does not own at the time, and in which he afterwards acquires no interest.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before Bayard T. Hainer, Trial Judge.*

*J. W. Quick* and *S. H. Harris,* for plaintiff in error.

*Green & Marlin,* for defendant in error.

Opinion of the court by

BEAUCHAMP, J.: This is an action in replevin commenced by the plaintiff in error against defendant in error, in the district court of Noble county, to recover the possession of a crop of wheat grown and harvested on the southwest quarter of section eighteen, township 23, range 2 east, in the Otoe Indian reservation at that time attached to Noble

county for judicial purposes, in which the plaintiff claimed a special ownership, and to be entitled to the possession thereof by reason of a certain instrument in writing, which reads as follows:

"Know all men by these presents:

"That C. Z. Spurlock, of the county of Kay and Territory of Oklahoma, in consideration of the sum of eleven thousand five hundred forty eight dollars to him in hand paid, the receipt whereof is hereby acknowledged, has and by these presents does grant, bargain, sell, assign, transfer and make over unto J. R. Sheets all the following described property, to wit:

"All the farm leases held by C. Z. Spurlock in Otoe reservation, O. T., and to include all crops raised thereon during the term of said lease. This mortgage to cover all rights owned or to accrue to the mortgagor by rents or otherwise, including the s. 1-2, 13; s. e. 14; s. w. 12; w. 1-2, s. e. 12, e. 1-2, n. e. 12; n. w. 12; all in town 23, n; r. 1 e.; also s. w. 18; n. w. 19; s. e. 15; s. e. 27; all in town. 23, n; r. 2 e.; and all increase. All said property being owned by me and kept on the above described premises and free from liens of every kind whatsoever.

"To have and to hold the same forever, provided, and these presents are upon the express conditions that if the said mortgagor shall pay to the said mortgagee, or order, certain promissory notes, to wit: One for $5319.27, dated Aug. 28, 1902; due July 1, 1903; One for $6228.73 dated Aug. 28, 1902; due July 1, 1904; interest at 10 per cent. from date; then these presents and this transfer to be void and of no effect, but in case of non-payment of said sum of money or any part thereof at the time mentioned or in case the said mortgagee, his agent, attorney or assigns to take possession of said property, and sell the same at public or private sale, after giving ten days' notice thereof by posting up printed or written notices in five public places in Kay county, and to

apply the avails of said property to the payment of the above indebtedness and the whole thereof, returning the residue to the mortgagor upon demand after paying said indebtedness and all costs, charges and expenses of such taking, advertising and selling. Attorney's fee of $25.00 in case of commencement of foreclosure of this mortgage.

"And the said mortgagor hereby waives demand and personal notice of the time and place of sale.

"Witness my hand this 28th day of Aug. 1902.

"C. Z. SPURLOCK.

"Signed and delivered in presence of

"F. W. STONE.

"R A. LOGUE."

On June 18, 1902 the defendant, J. R. Sheets, W. C. Snodgrass and C. Z. Spurlock executed certain notes to the plaintiff for the purchase of a threshing outfit. On August 28, 1902, Spurlock executed his notes to the defendant, Sheets, and to secure payment of the notes executed the instrument hereinafter set out. The land described in the instrument was at the time Indian land, being an allotment of an Indian, Albert Green under the control of an Indian agent and the interior department. The notes executed by Spurlock to Sheets, and the instrument set out given to secure the payment of the same, were on October 21, 1902, delivered to John Tracy, agent for Reeves & Company, to be held as collateral security for the payment of the notes of Sheets, Snodgrass and Spurlock to Reeves & Company, with the following agreement:

"Newkirk, O. T., Aug. 21, 1902.

"I have this day received of John R. Sheets two notes dated Aug. 28, amount $11,548.00 given by C. Z. Spurlock,

these notes to be held by Reeves & Co. till John R. Sheets pays the balance of his notes due Reeves & Co. that mature in 1902.

> "John Tracy.
> "J. R. Sheets."

February 15, 1901, Spurlock leased the land described in the mortgage from Albert Green, to an Otoe Indian for a term of three years from August 1, 1901, which lease was approved by the department of the interior on September 12, 1901. On May 4, 1903, this land was conveyed by deed to Frank E. Stone, which deed was approved by the department of the interior on May 19, 1903. The lease by Green to Spurlock contains the following provision:

"That he (Spurlock) will not at any time during the period for which said land and premises are herein leased, assign, lease, convey or transfer any of his or their estate, or term, or any part thereof in the same, or the appurtenances thereto, or sub-let the same to any person or persons whomsoever, without the consent thereto of the party of the first part (the Indian) in writing being first obtained and the same approved by the secretary of the interior."

Spurlock turned the possession of the land over to Sheets in 1903, and in the fall of 1903 Sheets seeded the land to wheat, which crop he harvested in 1904. After the crop was harvested, the plaintiff made demand for the same, and possession having been refused, this suit was brought on June 27, 1904; Sheets gave a re-delivery bond and retained possession of the wheat. Upon the conclusion of the evidence, over the objection and exception of the plaintiff, the court directed the jury to find for the defendant. Motion for new trial was heard and overruled and exceptions saved, and plaintiff in error brings the case here upon petition in error and case made for review.

As will be seen from the facts as stated, the interest of Spurlock in the land at the time he executed the instrument in writing to Sheets was such as he derived from the lease executed by the Indian Green to him, and approved by the secretary of the interior, and this interest by the express terms of the lease and as expressly provided by statute, was non-alienable. See 26 Stats. 795. This court held in the case of *Megreedy et al v. Macklin et al,* 12 Okla. 666, that:

"Where a party holds a lease of Indian lands which has been approved by the proper officers of the interior department, such lease containing a provision that the party holding the lease will not at any time, during the period for which the said lands and premises are herein leased, sublease, assign, lease, convey or transfer any of his estate, interest or term or any part thereof, or sub-let the same to any person without the consent thereto of the party of the first part, and the approval of the same by the secretary of the interior: *Held* that a sub-leasing of the same without the consent of the secretary of the interior is void, and conveys no right by such sub-leasing, and that the sub-lease cannot be enforced; that the doctrine of estoppel between landlord and tenant does not apply."

It is argued by counsel for plaintiff in error that the case of *Megreedy et al v. Macklin et al., supra,* is distinguishable from the case at bar in this, "That the plaintiff is claiming no interest in the lease but only attempting to subject the crops raised thereon to the payment of the mortgage debt. That the lessee has a right to mortgage crops grown on land there can be no question. Under our statute a contract void in part is not void *in toto.*" And counsel calls our attention to section 765, Wilson's Statutes, which reads:

"Where a contract has several distinct objects, of which one at least is lawful and one at least is unlawful in whole

or in part, the contract is void as to the latter, and valid as to the rest."

Counsel argues that the object of the instrument set out was to pledge the crops raised on the leased land as security for the indebtedness from Spurlock to Sheets, and that this was a lawful object, and that such a mortgage does not require the approval of the department of the interior; that it is a contract the lessee has a lawful right to make, and in that respect cannot be considered void; that the plaintiff, Reeves & Company, is claiming no interest whatever in the leasehold estate.

The contract is clear and explicit in its terms, and its object as expressed upon its face is to convey the farm leases held by Spurlock in the Otoe reservation, including all crops raised thereon by him during the term of his lease, to secure the payment of the notes given by Spurlock to Sheets, and clearly explains the intention of the parties at the time, to make the conveyance a transfer of all rights held by Spurlock under his lease including the crops.

As will be noticed, the instrument by which Spurlock attempted to convey his interest in the leases was executed on the 28th day of August, 1902, and in the fall of 1903, when the wheat in question was seized, the land had been deeded to Stone. Spurlock had previously turned possession of the land to Sheets, and Spurlock did not seed the wheat in question, or have any interest whatever in it, but the same was seeded by Sheets, and by Sheets harvested and threshed. Conceding for the purposes of this case that the instrument executed by Spurlock to Sheets was a valid chattel mortgage upon all of the crops raised on the land in question during the term of Spurlock's lease, which were raised and owned

by him, such a mortgage could not be construed to cover crops that were raised and owned by Sheets, and in which Spurlock had no right or interest, or subsequently acquired any. While a mortgage upon crops to be grown in the future may be valid, a mortgagor cannot create a lien upon property which he does not own at the time, and in which he afterwards acquires no interest.

The plaintiff in error directs our attention to the case of *Eckles v. Ray and Lawyer*, 13 Okla. 541, in which it was held by this court that:

"Where the lessee of real estate for cash rent gives a mortgage upon crops to be planted and grown, on the leased premises as security for the contracted rental value, which mortgage is duly executed and filed of record; a sub-lessee is bound by the terms and conditions of such mortgage, and the crops grown by such sub-tenant as well as the tenant are liable for the rent of said premises."

The facts were:

"In October, 1901, one Haug was the owner of a certain farm in Oklahoma county, and one Cole was his agent therefor. In the same month this Cole, for Haug, rented this farm to one Adamson, for the crop year 1902, for the cash rent of $140.00, and the said tenant executed to Cole his note for the amount of said rent, falling due in the fall of 1902 and secured the payment thereof by a chattel mortgage on the crops to be grown on the land during the year 1902, and on certain stock. The lease was filed and indexed as a chattel mortgage and the chattel mortgage was duly filed in October, 1901, and indexed in the office of the register of deeds, as required by law.

"In the spring of 1902 the said Adamson, by the verbal consent of Cole, sub-let to the plaintiff in error thirty-five acres of said land. When Cole gave his consent, he verbally

stated that 'he had no objection to the sub-leasing, provided it did not affect his rights.' "

In the opinion it is said:

"It is urged by plaintiff in error (Eckles) that he was never indebted to the owner of the land, that his debt was direct to Adamson, and that debt he fully paid in the gar-. nishment proceedings. This statement overlooks the contract under which he entered into possession of the land, which was an agreement between the plaintiff in error and both Adamson and Cole by the terms whereof he was permitted to occupy a portion of the land, such occupancy not to affect the rights of the land owner. Now what were the rights of the land owner? Such rights were enumerated and stipulated for in the mortgage given by Adamson to Cole to secure $140.00, the consideration for the lease.

"In this, while he was not a signer of the Adamson note and mortgage, he nevertheless stipulated that his rights under his contract of sub-lease should be subject to the landlord's right under the mortgage of which he had notice from the record, and further notice by reason of the fact that when he applied to Adamson to sub-let a portion of the land, he was informed that this could not be done except with the landlord's consent, which consent was afterwards procured and accepted with the understanding that such sub-letting should not affect the landlord's rights.

"In consideration of this question, counsel for plaintiff in error stop to enquire what would be his right if plaintiff in error had entered upon this land without the consent of the landlord, and urge that he could not in such case be made liable under the mortgage, but would have had his day in court touching the rental value of the ground by him occupied after raising a crop thereon.

"This proposition or phase of the case is not before the court. It is sufficient to say that it is not the transaction upon which the rights of the parties are here founded. The

statute provides secs. 11 and 12, ch. 17, of the laws of 1901, that no tenant shall assign or transfer his term or interest or any part thereof to another without the written consent of the landlord, and if any tenant does so the landlord upon ten days' notice shall have the right to re-enter the premises, and dispossess both the tenant and sub-tenant. The statute then furnishes the reason for an agreement between the land-lord and Adamson, the tenant and Eckles, the plaintiff in error, as sub-tenant, which agreement made the right of the plaintiff in error subject to the terms of the mortgage."

In the case now under consideration, it is not claimed that Spurlock sub-let to Sheets with the agreement and understanding that he was to pay the notes or mortgage that he, Spurlock, had given, but however that may be, when Spurlock undertook to convey to Sheets by the instrument hereinbefore set out, all the interest that he had in the land upon which the wheat crop in question was subsequently grown, was such as he derived from the lease executed by the Indian, Green, to him, and which was approved by the interior department; and this interest, by the express terms of the lease, as well as by the provisions of the statute before cited, could not be assigned or conveyed except with the approval of the department of the interior. As before stated the instrument by which such interest was attempted to be conveyed was null and void, and when Spurlock undertook to convey to Sheets he had no alienable interest which he could convey. The crop in question had not at that time been planted.

A number of authorities are cited by counsel for plaintiff in error in his brief to the effect that the mortgagor is estopped from denying he was the owner of the property contained in the chattel mortgage, and if he did not own the same at the time the mortgage was executed, but afterwards acquired

the title thereto, the same enures to the benefit of the mortgagee, and that the mortgagee is estopped, from setting up against the assignee a title which dwelt in him at the time of the assignment or one which he afterwards acquires.

In the cases cited the mortgagors were the owners or had an interest which they could mortgage in the property, but no case can be found where it was held that a mortgage covered an interest in property subsequently acquired by a mortgagor, which was never included in or covered by the mortgage given by him, and no case can be found wherein it was held that a mortgagee was estopped from setting up title in himself to property which was never covered or included in the mortgage, and which was subsequently acquired by him from the mortgagor.

By the provisions of section 3188, Statutes 1893, being the section referred to in the opinion in the case of *Eckles v. Ray and Lawyer*, it is provided that:

"An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest."

Whatever may be said as to the validity of this statute it can not be construed or extended to cover an interest that was never possessed or ever acquired by a mortgagor; by its express provisions the lien only extends to the acquired interest of the mortgagor.

In this case Spurlock never had or ever acquired any interest in the crop in question, and Sheets did not acquire the property from Spurlock, that was included in and covered by this mortgage.

There was no error by the trial court in directing the jury to return a verdict for the defendant. The judgment of the district court of Noble county is therefore affirmed, with costs to plaintiff in error.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.