Points Decided.

(No. 4717.   May 19, 1927.)

MARY M. LORDS, Respondent and Cross-Appellant, v. LAVA HOT SPRINGS STATE BANK, a Corporation, and H. W. HENDERSON, Sheriff of Bannock County, Idaho, Appellants and Cross-Respondents.

[256 Pac. 761.]

CHATTEL MORTGAGES—CROP MORTGAGE EXECUTED BY VENDOR OF LAND AS AFFECTING PURCHASER—CROPS SOWN BY VENDOR—CROPS SOWN BY PURCHASER—ASSUMPTION OF MORTGAGE BY PURCHASER—EVIDENCE—CROP MORTGAGE GIVEN BY PURCHASER TO VENDOR—EFFECT ON LIEN OF CROP MORTGAGE GIVEN BY VENDOR TO BANK.

1. Purchaser of land on which hay was growing took land subject to mortgage previously executed by vendor on hay crop.

2. Under C. S., sec. 6373, lien of chattel mortgage on crop to be sown or grown attaches thereto when such crop is sown or caused to be sown by mortgagor, but does not attach to crops sown by others, except in so far as mortgagor has or retains interest in crop.

3. Evidence *held* insufficient to establish that purchaser of land had assumed, or agreed to pay, crop mortgage executed thereon by vendor, or to hold crop subject to such mortgage.

4. Where owners executed crop mortgage to bank on crops to be grown on property, and thereafter sold land to purchasers, who executed crop mortgage to secure balance of purchase price, mortgage given by vendor did not attach to grain thereafter sown by purchasers, since vendor did not, by taking mortgage from purchasers, sow or cause to be sown crop of next year, and lien acquired by such mortgage was not such as to subject crop to lien of mortgage given by him to bank or to foreclosure thereunder.

APPEAL from the District Court of the Fifth Judicial District, for Bannock County. Hon. Robert M. Terrell, Judge.

Publisher's Note.

3. See 5 R. C. L. 407.

See Chattel Mortgages, 11 C. J., p. 428, n. 41, 42, p. 442, n. 66, p. 443, n. 72, p. 505, n. 80, p. 506, n. 94, p. 595, n. 24, p. 617, n. 86, p. 629, n. 16 New.

Action for conversion.   Judgment for plaintiff.   *Affirmed.*

Holden & Coffin, for Appellants and Cross-Respondents.

A mortgage on personal property not owned, but to be subsequently acquired by the mortgagor, is good against him and all claiming under him.   (*Pierce v. Langdon,* 3 Ida. 141, 28 Pac. 401; *Mitchell v. Winslow,* 2 Story, 630, Fed. Cas. No. 9673; *Grand Forks National Bank v. Minneapolis & N. Elevator Co.,* 6 N. D. 357, 43 N. W. 808; *Ludlum v. Rothschild,* 41 Minn. 218, 43 N. W. 137.)

P. C. O'Malley, for Respondent and Cross-Appellant.

This case comes squarely under C. S., sec. 6373, defining what personal property may be mortgaged.

This crop that was seized by the sheriff was not sown, grown, raised or harvested by A. B. Cheney, the mortgagor under the crop mortgage, and the said Cheney did not retain any interest in the crop that would be subject to the chattel mortgage.   (*Collins v. Brown,* 19 Ida. 360, 114 Pac. 671.)

This was an action for conversion and Mrs. Lords had the title and right to possession of the property converted. (*Portland Seed Co. v. Clark,* 35 Ida. 44, 204 Pac. 146.)

TAYLOR, J.—Plaintiff, respondent and cross-appellant, a married woman, brought this action against appellants, Lava Hot Springs State Bank and H. W. Henderson, for conversion of a crop consisting of 850 bushels of wheat and 15 tons of hay.   At the close of all the evidence, each party moved for a directed verdict.   The court directed a verdict for plaintiff for the value of the wheat.   Defendants appeal from the judgment.   Plaintiff, by cross-appeal, assigns as error the failure of the court to direct a verdict in her favor also as to the value of the hay.

On November 1, 1921, A. B. Cheney and wife, owners of the land upon which the crops in controversy were grown, to secure their note in the sum of $709.37, due May 1, 1922, executed a crop mortgage to the defendant bank upon all

the crop grown thereon during the years 1922 to 1925. This mortgage was filed of record December 28, 1921.

On February 21, 1923, Cheney, by a conditional sale contract, agreed to convey the land to N. D. Lords, husband of plaintiff, and upon the same date Lords and plaintiff executed to Cheney a crop mortgage upon all crops sown and grown upon these lands during 1923, 1924 and 1925, to secure the sum of $3,000, payable $1,000 annually upon the first day of each following December. The giving of this mortgage is recited therein as a part of the agreement.

Lords, with plaintiff, his wife, and family, moved upon the land in March, 1923, and while they were so living there planted the wheat seed of the crop in controversy. Plaintiff alleged that she and the children did practically all the work and labor in planting, cultivating, producing and harvesting the crop; that her husband deserted and abandoned her and the family and farm, and left her in control and management of the farm; and that she was, on the date of the seizure, the owner and in the lawful, rightful and peaceable possession of the crop.

The bank, in November, 1923, through the sheriff, took possession of and sold the hay and wheat crop under foreclosure of the Cheney mortgage to the bank, and defendants pleaded such taking and sale thereunder in defense of this action.

[1] Cheney having sold the land upon which the hay was growing, the purchaser took subject to the mortgage upon the hay crop. A different question is presented as to the wheat not sown until after the sale of the land. The evidence shows conclusively that the wheat was sown by the community, and was community property. The only question is: Did the Cheney mortgage attach to the grain when sown by Lords?

[2] While the lien of a chattel mortgage upon a crop to be sown or grown will attach to such crop when sown, or caused to be sown, by the mortgagor, it will not attach to crops sown by others, except in so far as the mortgagor has or retains interests in the crop. (C. S., sec. 6373.)

Defendants, over objection, introduced the mortgage from Lords and wife to Cheney and an assignment of it to the bank, with some testimony which they contend established that Lords assumed and agreed to pay the Cheney mortgage to the bank, and to hold the crops subject to that mortgage. These exhibits and this evidence were later stricken on motion of plaintiff, and this is assigned as error.

This mortgage, assignment and purported assumption of liability were not pleaded by the defendants. No payment was due upon the mortgage of Lords to Cheney until December, 1923. While the defendant bank might, by proper proceeding in equity, have availed itself of the right to subject the crop to the mortgage given by plaintiff and her husband to Cheney and assigned to the bank, and thus subject Cheney's lien thereon to its claim against Cheney, this was not done, nor did the defendant plead as an offset against the damages by conversion, its right or lien under the Lords mortgage assigned to it. (11 C. J., p. 595, sec. 292.)

[3] The evidence of Cheney and Evans, even if considered, was insufficient to establish that plaintiff's husband had assumed or agreed to pay the Cheney mortgage or hold the crop subject to it, as contended. Cheney, when asked what the agreement or understanding was between him and Lords, said, "We understood that one mortgage was to protect the other that I had with the bank"; that Lords was to pay what he owed Cheney to the bank "as it fell due." This plainly did not prove an agreement to assume the Cheney mortgage. That mortgage was already long overdue, and the evidence that Lords was to pay the bank "as it fell due" could only refer to his payments falling due on his debt to Cheney.

Evans testified that Cheney asked consent to sell the land, and if he did so if the bank would accept a transfer of the mortgages in the name of another party; that he was assured "that we would, providing he took it in his name and transferred it over to us, making it binding on both parties." Evans did not testify to any agreement of Lords

to assume or pay the Cheney mortgage, but that in August, 1923, Lords and Cheney explained that Cheney had sold the land and received a mortgage from Lords, and Lords asked whether, in case of his inability to make the first payment that fall, the bank would be in a position to carry him over for part of it, as to which no answer was shown and no agreement whatever.

[4] Cheney had no "property" right in the wheat crop which could be directly subjected to foreclosure of his mortgage to the bank. He did not, by taking a mortgage from Lords, sow or cause to be sown the crop of the next year, and the lien he acquired was not an interest in the wheat crop, but a lien upon it which did not subject the crop itself to the lien of his mortgage to the bank or to foreclosure thereunder. (11 C. J., p. 428, sec. 39; *Reeves & Co. v. Sheets,* 16 Okl. 342, 82 Pac. 487; *McMaster v. Emerson,* 109 Iowa, 284, 80 N. W. 389; *Christianson v. Nelson,* 76 Minn. 36, 78 N. W. 875, 79 N. W. 947; *Bouton v. Haggart,* 6 Dak. 32, 50 N. W. 197; *Broughton v. Powell,* 52 Ala. 123.)

The judgment is affirmed. No costs to either appellant.

Givens and T. Bailey Lee, JJ., concur.