## TATE et al. v. BRISTOW.

No. 24825.   April 16, 1935.

Rehearing Denied May 28, 1935.

C. A. Ambrister and Potter & Potter, for plaintiffs in error.

S. E. Gidney and Thomas J. Wiley, for defendant in error.

PER CURIAM. In this case R. S. Bristow, plaintiff in the court below, began suit on December 20, 1931, against H. C. Tate and National Surety Company, defendants in the court below, seeking to recover certain rentals alleged to be due by reason of an oil and gas lease upon certain land belonging to Morris Sam, a full-blood Choctaw citizen, said land having been duly allotted to him by reason of his Indian citizenship.

On November 3, 1919, Morris Sam, being a restricted Indian, made the lease above set out, for a term of ten years from date of approval by the Secretary of the Interior, through the Superintendent of the Five Civilized Tribes, which lease was approved by the Secretary of the Interior of the United States on February 20, 1920. On the 8th day of October, 1920, restrictions upon the alienation of this land were removed by the Secretary of the Interior, effective 30 days thereafter, and on the 9th day of November, 1920, Morris Sam sold said land to the defendant in error, R. S. Bristow.

As a condition precedent to the execution of this lease by Morris Sam, the Superintendent of the Five Civilized Tribes required that a bond be given by the lessee, conditioned that lessee should faithfully perform the obligations of this lease and certain other leases which he had taken, or was about to take, upon restricted Indian lands. This bond, in the penal sum of $15,000, was executed by the lessee.

Under the terms of the lease, certain advance rentals were to be paid by the lessee each year, and, in addition, it was provided that lessee should drill for oil or gas within one year, but that the payment of the $1 per acre, together with the advance rentals, should be sufficient to delay the obligation to drill for each one-year period. For several years the advance rentals and the delay rental of $1 per acre were paid. Finally, in the year 1924, the payment of rentals ceased, and defendant in error, on December 20, 1931, sued for the amount of unpaid rentals alleged to be due. National Surety Company, one of the plaintiffs in error, executed the bond above mentioned, as surety, and was made a party defendant in the action.

Plaintiffs in error sought to avoid liability under the terms of the lease upon two theories: (1) Because the bond executed by H. C. Tate and National Surety Company was executed to the United States government for the payment of obligations to the government, and does not inure to the benefit of the assignee of Morris Sam, defendant in error; and (2) because, they say the Superintendent of the Five Civilized Tribes gave to the plaintiff in error, Tate, a release from the obligations of the said bond.

The cause was tried to the court, a jury being waived, and the trial court made a general finding of facts in favor of plaintiff below, except that certain items of rental sued for were held to be barred by the statutes of limitations, and the trial court rendered judgment against both defendants in the sum of $2,240.92, and against National Surety Company in the additional sum of $708.83, together with costs in the sum of $10.25, the judgment to bear interest at 6 per cent. per annum from February 6, 1933, until paid.

Motion for new trial was filed by each defendant. Upon consideration of these motions, the court modified its original judgment so that both defendants were adjudged to pay the sum of $2,240.92, with $11.-25 costs, the judgment to bear interest at 6 per cent. from the 6th day of February,

1933, and with this modification the motions for new trial were overruled. Exceptions were duly saved, notice of appeal given, supersedeas bond was fixed in the sum of $4,750, which bond was duly executed, filed and approved, being signed by plaintiffs in error, with Standard Surety & Casualty Company of New York as surety.

In the trial court, the parties filed an agreed statement of facts, reserving the right to introduce additional evidence not in conflict with the facts agreed upon. By this stipulation the facts are agreed to be, in substance, as follows:

(1) That there was duly allotted to Morris Sam, a full-blood Choctaw Indian, the land involved in this action, the alienation of which was restricted by law.

(2) On the 3rd day of November, 1919, Morris Sam made to H. C. Tate, plaintiff in error, the oil and gas lease involved here, upon said lands, which was approved by the Secretary of the Interior on February 20, 1920.

(3) That a bond to secure the performance of the terms of the lease, a true copy of which is attached to the petition, was executed by Tate with the National Surety Company, as surety.

(4) That restrictions upon alienation of said lands were removed on October 8, 1920, to become effective 30 days thereafter, and that plaintiffs in error were so advised on November 15, 1920.

(5) On November 9, 1920, Morris Sam conveyed said lands by valid deed, duly recorded, to R. S. Bristow.

(6) The rentals were paid for 1921, 1922, and 1923, and on January 14, 1924, H. L. Sturm paid to R. S. Bristow $325 upon such rentals, which was the last amount of rental received.

(7) Said lease was never released or surrendered, and expired February 20, 1930.

(8) Plaintiff made no demand on plaintiffs in error, or either of them, to pay rental or develop the property until September, 1930, nor did he notify plaintiffs in error that said rentals were unpaid.

(9) On November 22, 1923, an assignment of the oil and gas lease involved here, by H. C. Tate to Hugh L. Sturm, was filed for record in Love county and duly recorded.

(10) On February 5, 1931, plaintiff sued in the District Court of the United States for the Eastern District of Oklahoma the defendant, National Surety Company, upon the same cause of action herein sued upon, and it having developed that the amount involved was less than $3,000, action was dismissed without prejudice, for want of jurisdiction.

Plaintiffs in error have made several assignments of error, but in their brief they have insisted for reversal of the judgment of the trial court upon two propositions only. No other assignments of error except those outlined in the two propositions, as hereinafter stated, are argued in the brief, and no authorities are cited in support of any other assignment. It is well settled in this court that we are authorized to consider only those assignments of error urged in the brief which are supported by citations of authority. The rule is so laid down in Morton v. Thomason, 146 Okla. 255, 293 P. 1005; Stockman v. Loeser, 83 Okla. 190, 201 P. 499, and numerous other decisions.

The first proposition upon which plaintiffs in error rely is as follows:

"The judgment should be reversed for the reason that the bond was executed to the United States government for the payment of obligations to the government, and does not inure to the benefit of the defendants herein."

It is evident that the words "and does not inure to the benefit of the defendants herein" contain clerical error and the intention was to say "does not inure to the benefit of the defendant in error."

We are unable to agree that the bond executed by Tate does not inure to the benefit of the purchaser of the Morris Sam lands. This bond was executed to insure the performance of the terms of the lease. It was taken for the benefit of the Indian, Morris Sam. Its execution was required by the government before the lease should be approved, and the fact that such a bond was in existence added to the saleable value of the land of the Indian so covered by the lease.

Paragraphs 12 and 13 of the lease evidence a clear intention that purchasers from the lessor and assignees of the lease shall take the benefit of all the provisions thereof. Paragraph 12 is:

"In event restrictions on alienation shall be removed from all the leasehold premises described above, this lease shall be released from the supervision of the Secretary of the Interior, such release to take effect with-

out further agreement, from the date such restrictions are removed, and thereupon the authority and power delegated to the Secretary of the Interior as herein provided shall cease, and all payments required to be made to said Superintendent for the Five Civilized Tribes, Muskogee, Okla., shall thereafter be made to lessor or the then owner of said lands in person or be deposited to the credit of said lessor or his assigns at the City State Bank of Ardmore, Okla., or such other place as the lessor or his assigns may, from time to time designate in writing, and changes in regulations thereafter made by the Secretary of the Interior applicable to oil and gas leases shall not apply to this lease."

Paragraph 13 is as follows:

"Each and every clause and covenant in this indenture shall extend to the heirs, executors, administrators, successors, and lawful assigns of the parties hereto."

The bond itself carries this significant provision:

"Provided, that in event restrictions on alienation shall be removed from all or any (in individual bonds substitute 'the' for 'any') leased tract to which this bond applies and the same shall be released from the supervision of the Department of the Interior, the authority and power devolving upon the Department of the Interior. or any of its officers, to institute suit or take other action hereunder, shall devolve upon and be exercised by the lessor of such tract, his heirs, successors and assign."

This land was leased by Morris Sam. The United States government acted in an advisory capacity as to its terms. It was approved by the Secretary of the Interior. The services of the government were those of a quasi guardian of the restricted Indian. The government was not acting for itself. The power of the Secretary of the Interior was that of approval or disapproval only. United States v. Brown, 15 F. (2d) 565; Jennings v. Wood, 192 F. 507; Midland Oil Company v. Turner, 179 F. 74; Crosbie v. Brewer, 68 Okla. 16, 158 P. 388, 173 P. 441.

Where the terms of the lease and the bond securing same indicate clearly, as in this case, that upon removal of restrictions the owner of the land becomes the owner of all the rights and authority formerly had by the Department of the Interior as to collection of rents and enforcement of the terms of the lease and the bond, we cannot conceive that the removal of restrictions can be held to effect a cancellation of the bond.

In Anchor Oil Co. v. Gray, 257 F. 280,

it is clearly held that the removal of restrictions did not cancel the lease. See, also, Webber v. Blake, 52 Okla. 648, 153 P. 109.

We, therefore, hold that upon removal of his restrictions, Morris Sam stood in the shoes of the Interior Department as to the collection of rents accruing thereafter and as to the enforcement of the bond. Likewise, upon the sale of the land to defendant in error, Bristow, he, Bristow, became possessed of the same rights and powers as to said lease and bond as accrued to Morris Sam upon the removal of his restrictions.

The second proposition argued by plaintiffs in error is:

"The court erred in holding that the release given by the Superintendent of the Five Civilized Tribes to the plaintiffs in error did not relieve them from all obligations in regard to the bond."

This proposition requires consideration of matters both of law and of fact. The question whether a release of the bond was executed by the Interior Department is one of fact and is an issue here. Upon this question of fact the trial court has passed in its general findings, and it has found against the contention of plaintiffs in error. This court will not weigh the evidence, but will be bound by the findings of the trial court if these findings are supported by competent evidence. Adams v. Hansford, 130 Okla. 155, 265 P. 762; Watashe v. Tiger, 88 Okla. 77, 211 P. 415; Nations et ux. v. Stone, 92 Okla. 18, 217 P. 1031.

Upon the question of law involved, i. e., the effect of a release of the bond by the Superintendent of the Five Civilized Tribes after the removal of restrictions, plaintiffs in error have cited no authority to sustain their position, and we, under the decisions of this court hereinbefore cited, are not required to consider such argument.

But, in order that a determination of the question may not be avoided. we think it proper to say that we are unable to agree that this bond was made for the benefit of the government. The terms of the lease and the bond indicate clearly to the contrary, and the authorities hereinbefore cited do not leave the matter in doubt.

We, therefore, hold that we are bound by the findings of fact made by the trial court against the contention of plaintiffs in error, and we further hold as a matter of law that there was no authority in the Superintendent of the Five Civilized Tribes

to release the obligation of the bond in question after the restrictions of Morris Sam had been removed and the land had been sold by Morris Sam to the defendant in error.

Plaintiffs in error further contend that the purported assignment of the lease by Tate to Hugh L. Sturm relieved Tate and the surety on his bond from all obligation to perform the terms of the lease. The issue as to this assignment was one of fact, Sturm testifying that he never received it. This issue of fact was decided adversely to plaintiffs in error by the trial court. It seems to us clear that Tate could not, by assignment of the lease, avoid his obligations thereunder. McFarland v. Mayo, 65 Okla. 28, 162 P. 753.

It is argued by plaintiffs in error that the surety on the bond was released by reason of the failure of the defendant in error to notify the makers of the bond that he expected to hold them liable, and further to notify them that the assignee of the lease had failed to pay the rentals. To support this contention, the text in 32 Cyc. 109 is cited. The doctrine there expressed is not applicable here. In the case at bar the principal and surety had full knowledge of the extent of the liability. Linton v. Chestnutt-Gibbons Groc. Co., 30 Okla. 103, 118 P. 385; J. R. Watkins Co. v. Jennings, 131 Okla. 295, 269 P. 265.

The lease, by its terms, gives the right to lessee to cancel the same in the manner provided. This, the lessee did not see fit to do. We find no error in the judgment of the trial court, and that judgment is affirmed.

Defendant in error moves the court for judgment upon the supersedeas bond filed herein, but calls attention to the fact that National Surety Company, defendant in error, is now in receivership. No question upon this point has been raised by plaintiffs in error. The fact that the National Surety Company is now in receivership cannot release the surety on the supersedeas bond given herein. State ex rel. School District No. 40, Bryan County, v. Walden, Judge, 167 Okla. 144, 28 P. (2d) 546.

It appears that defendant in error is entitled to judgment upon the supersedeas bond as prayed for, and judgment upon said bond is now here rendered against H. C. Tate, as principal, and Standard Surety & Casualty Company of New York, as surety, in the amount of $2,253.75 as principal,

together with interest at 6 per cent. per. annum from the 6th day of February, 1933, until paid, and the costs incurred in this action.

The Supreme Court acknowledges the aid of Attorneys James H. Gordon, Geo. W. Porter, and W. H. H. Clayton in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Gordon, and approved by Mr. Porter and Mr. Clayton, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.