**AMERICAN SURETY CO. OF NEW YORK v. UNITED STATES.**

**No. 2026.**

Circuit Court of Appeals, Tenth Circuit.

May 29, 1940.

904

Before PHILLIPS, BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

The United States brought this suit against Andrew P. Gunther and the American Surety Company of New York[1] to recover royalties due under a lease on certain coal lands of the Choctaw and Chickasaw Indian Tribes situated in Le Flore County, Oklahoma.

The land covered by the lease was set aside by the Atoka Agreement, Act of June 28, 1898, 30 Stat. 495, 505, as the common property of the members of the Choctaw and Chickasaw Tribes. Pursuant to the Act of March 4, 1913, 37 Stat. 1007, and the rules' and regulations prescribed by the Secretary of the Interior thereunder, the mining trustees of the Choctaw and Chickasaw Tribes on June 25, 1914, executed a coal mining lease to Gunther and Alfred N. Sicard.

By the terms of the lease, the lessees covenanted to pay a royalty of eight cents per ton on all coal taken from the leased premises and a stipulated annual advanced royalty. The lease provides that if the lessees shall neglect or refuse to pay the annual advance royalty for the period of sixty days after it becomes due and payable, the lease shall be null and void; that the lessees will not assign, transfer, or sublet their estate, interest, or term to any person or persons whomsoever without the written consent of the trustees "subject to the approval of the Secretary of the Interior"; and that the lease shall in all respects be subject to the rules and regulations prescribed under the Act of March 4, 1913, by the Secretary of the Interior, either prior to or subsequently to the date of the lease.

The lessees, as principals, and the Equitable Surety Company, as surety, executed a bond conditioned for the faithful performance by the lessees of the terms of the lease. Both the lease and the bond were approved by the Secretary of the Interior.

On October 23, 1916, Sicard assigned all his rights under the lease to Gunther. The assignment was approved by the mining trustees and the Secretary of the Interior.

On November 13, 1920, Gunther, as principal, and the Surety Company, as surety, executed a bond in the penal sum of $10,000, conditioned that Gunther would faithfully carry out and observe all the obligations of

Stephen Chandler, Troy Shelton, Richard W. Fowler, John W. Swinford, and Edgar S. Vaught, Jr., all of Oklahoma City, Okl., for appellant.

Norman M. Littell, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., of Muskogee, Okl., and Charles R. Denny, Jr., and Roger P. Marquis, Attys., Department of Justice, both of Washington, D. C., for the United States.

---

[1] Hereinafter referred to as the Surety Company.

the lease and the assignment thereof and observe all the laws of the United States and all the regulations made, or which should thereafter be made by the Secretary of the Interior, applicable to such lease. The bond was duly approved by the Secretary of the Interior.

Bokoshe Smokeless Coal Company [2] is a corporation organized and existing under the laws of Oklahoma. Gunther owns 298 of the 300 shares of stock issued by the Coal Company. On June 15, 1925, Gunther executed a purported assignment of the lease to the Coal Company. The assignment expressly provided that it was subject to approval by the Secretary of the Interior. On the same day an instrument was executed by the mining trustees and by Gunther, as president of the Coal Company, by which the Coal Company accepted and the trustees consented to the assignment. The assignment was permitted to remain in the files of the United States Indian Agent at Muskogee, Oklahoma. It has not been submitted to nor approved by the Secretary of the Interior. The Surety Company has never expressly consented to such assignment.

The Coal Company was the owner, or in control, of lands commonly known as fee lands, situated adjacent to the lands covered by the lease and was conducting mining operations upon such fee lands. Through entries opened upon the fee lands and driven under the lands covered by the lease, the Coal Company produced coal from the lease during the period from June 25, 1925, to June 25, 1930. There is due the United States for royalties for coal produced from the lease, $6,196.41.

As a result of negotiations entered into in the latter part of 1929 between E. R. Jones, as counsel for Gunther and the Coal Company, and the Surety Company, an agreement was entered into in March, 1930, between the Coal Company and the Surety Company, whereby the Coal Company agreed to deposit in the Commercial National Bank of Muskogee, Oklahoma, the revenue derived from the sale of coal thereafter produced from the lease by the Coal Company, after deducting the costs of operation, and to apply the funds so deposited on past due royalties. It was during such negotiations that the Surety Company first learned that the Coal Company was conducting mining operations on such lease and that there had been a default in the payment of royalties. The Coal Company continued operations and made deposits in the bank in accordance with the agreement. From the funds so deposited, on December 23, 1930, with the consent of the Surety Company, $985.55 was paid on the past due royalties for the years 1925 and 1926.

In its answer the Surety Company pleaded that it was only liable for coal produced by Gunther and was not liable for coal produced by the Coal Company; that the mining trustees, by permitting the assignment to the Coal Company, and the operation of the lease by the latter, without the written approval of the Secretary of the Interior, altered the contract and discharged the Surety Company; that the lease had been automatically terminated long prior to the accrual of the royalties sued for because of the failure of the lessees to pay advanced royalties; and that the acts and conduct of the mining trustees and the Secretary of the Interior constituted an estoppel.

From a judgment in favor of the United States against Gunther and the Surety Company for $6,196.41, with interest at six per cent from June 25, 1930, the Surety Company has appealed.

The Act of June 28, 1898, provided that the acts of the mining trustees should be subject to the approval of the Secretary of the Interior. The Act of March 4, 1913, provided for the leasing to coal operators of additional acreage from the segregated coal lands of the Choctaw and Chickasaw Nations, under rules and regulations to be prescribed by the Secretary of the Interior. The lease here involved was prescribed by the Secretary of the Interior and expressly provided that an assignment thereof should not be made without the approval of the Secretary. The assignment to the Coal Company also provided that it was subject to the approval of the Secretary of the Interior. Such approval of the Secretary was prescribed for the protection of the Indian Tribes and to effectuate the policy of the United States as guardian of the Indians. The assignment to the Coal Company, lacking the requisite approval, was void and ineffectual.[3] It follows that there was no

---

[2] Hereinafter referred to as the Coal Company.

[3] Barnsdall v. Owen, 8 Cir., 200 F. 519; Reeves & Co. v. Sheets, 16 Okl. 342, 82 P. 487, 488; Megreedy v. Macklin, 12 Okl. 666, 73 P. 293, 294; Wattenbarger v. Hall, 26 Okl. 815, 110 P. 911.

alteration of the contract and that the Surety Company was not discharged from its obligation under the bond.

██ It is urged that because the mining trustees permitted the Coal Company to operate the lease for a period of five years without approval of the assignment by the Secretary of the Interior, and the United States failed to collect the royalties as they became due, to give notice to the Surety Company of the defaults in payment of royalties, and to exercise the right to terminate the lease for such defaults, the United States is barred from recovery under the doctrines of estoppel, ratification, or laches. Those defenses do not apply to actions brought by the United States in its sovereign capacity where they would frustrate the purpose of its laws or thwart its public policy.[4] By the provisions of the Act of Congress and the regulations of the Secretary of the Interior which have the force and effect of law, the acts of the mining trustees and assignments of the lease were made ineffectual without the approval of the Secretary of the Interior. The public policy of the United States to thus afford protection to the Indians with respect to leases of coal land was clearly manifested. To permit such prerequisite to validity to be rendered unnecessary by the application of the doctrines of estoppel, ratification, or laches would thwart that public policy.

██ Furthermore, if the assignment had been approved by the Secretary of the Interior, it would have effected a valid transfer, in accordance with the terms of the lease and the regulations, to the Coal Company and the Surety Company would not have been discharged. Where a bond is given to guarantee the performance of the obligations of a lease, and the lease, by its terms, is assignable, and the bond contains no provision relieving the surety in the event of an assignment, the surety is not discharged by an assignment made without its consent.[5] It follows that if the United States is now estopped to deny that the assignment was ineffectual, the Surety Company was not discharged by the assignment. The Surety Company may not, for the purpose of claiming an alteration of its contract of suretyship, assert that the mining trustees permitted the Coal Company to carry on operations under an assignment of the lease which was not approved by the Secretary of the Interior, and, for the purpose of avoiding the ineffectiveness of such assignment due to the lack of such approval, assert that the United States is estopped to deny the validity of the assignment. It may not thus assume inconsistent positions.

██ Unless the provisions of applicable law or of the contract of suretyship otherwise provide, forbearance to proceed against the principal will not affect the right of the creditor to pursue the surety. Hence, the failure of the United States to proceed against Gunther for the royalties as they matured did not discharge the Surety Company.[6]

██ Where the suretyship contract contains no stipulation that the creditor shall give notice to the surety of the principal's default, failure to give such notice does not discharge the surety. Linton v. Chestnutt-Gibbons Grocer Co., 30 Okl. 103, 118 P. 385, 386; 50 C.J. p. 170, § 276.

██ The lease did not automatically terminate upon the neglect or refusal of Gunther to pay the advanced royalties sixty days after they became due and payable. It is well settled that a provision for forfeiture for nonpayment of rental is for the benefit of the lessor and that upon default he may treat the lease as void or not at his election.[7]

The judgment is affirmed.

---

4 Pan American Co. v. United States, 273 U.S. 456, 506, 47 S.Ct. 416, 71 L.Ed. 734; Heckman v. United States, 224 U.S. 413, 446, 447, 32 S.Ct. 424, 56 L.Ed. 820; United States v. Beebe, 127 U.S. 338, 344, 8 S.Ct. 1083, 32 L.Ed. 121; United States v. Insley, 130 U.S. 263, 266, 9 S.Ct. 485, 32 L.Ed. 968; Board of Com'rs Douglas of County v. City of Lawrence, 102 Kan. 656, 171 P. 610, 611; 19 Am.Jur., p. 822, § 169.

5 Morgan v. Smith, 70 N.Y. 537; Way v. Reed, 6 Allen, Mass., 364; Weinsklar Realty Co. v. Dooley, 200 Wis. 412, 228 N.W. 515, 517, 67 A.L.R. 875; Oswald v. Fratenburgh, 36 Minn. 270, 31 N.W. 173, 174; Grommes v. St. Paul Trust Co., 147 Ill. 634, 35 N.E. 820, 824, 37 Am.St.Rep. 248. See, also, Tate v. Bristow, 172 Okl. 404, 45 P.2d 153.

6 Palmer v. Noe, 48 Okl. 450, 150 P. 462, 463, 464; Clark v. Hartford Fire Ins. Co., 180 Okl. 458, 70 P.2d 104, 105; Tidewater Coal Exchange v. New Amsterdam Cas. Co., D.C.Del., 20 F.2d 951, 955; Nelson v. First Nat. Bank of Killingley, 8 Cir., 69 F. 798, 807.

7 Stewart v. Griffith, 217 U.S. 323, 329, 30 S.Ct. 528, 54 L.Ed. 782, 19 Ann. Cas. 639; Western Union Tel. Co. v.

---

Brown, 253 U.S. 101, 112, 40 S.Ct. 460, 64 L.Ed. 803; 1 Underhill, Landlord and Tenant, § 401; Williston on Contracts, Rev.Ed., Vol. 3, § 746. See, also, Howard v. Manning, 79 Okl. 165, 192 P. 358, 362, 12 A.L.R. 819.